UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Krutel Defazio Mack, | ) | C/A No. 4:10-3039-RMG-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | )REPORT AND RECOMMENDATION | |
| | ) | |
| | ) | |
| Warden M. L. Rivera, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The pro se petitioner, Krutel Defazio Mack, ("Petitioner") has filed this habeas action seeking relief pursuant to 28 U.S.C. § 2241.[1]  Before the undersigned is the Respondent's Motion for Summary Judgment. (Doc. # 15.)

The Petitioner filed his petition for a writ of habeas corpus on November 29, 2010. (Dkt. # 1.)[2] On February 9, 2011, the Respondent filed a motion for summary judgment, along with supporting memorandum and exhibits.  (Dkt. # 15.)    The undersigned issued an Order filed February 10, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Petitioner of the motion for summary judgment procedure and the possible consequences if he failed

_____

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

[2]There is no stamp from the South Carolina Department of Corrections acknowledging receipt for mailing.  Thus, the date of filing is the date the Petitioner's habeas petition was received by the Clerk of Court.

1

to respond adequately. (Dkt. # 16.)  On April 29, 2011, thePetitioner filed a response in opposition.

(Dkt..# 31.)

## II.  DISCUSSION

### A.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants,

to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972);

Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of

fact, but to decide whether there is an issue of fact to be tried.   The requirement of liberal

construction does not mean that the court can ignore a clear failure in the pleadings to allege facts

which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor

can the court  assume the existence of a genuine issue of material fact where none exists.   If none

can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary

judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a

material element of the non-moving party's claims, the non-moving party bears the burden of

coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e);

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-

moving party must come forward with enough evidence, beyond a mere scintilla, upon which the

fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48

(1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable

to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the

non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to

defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir.

1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would

apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere

allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper

summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting

his or her position through "depositions, answers to interrogatories, and admissions on file, together

with . . . affidavits, if any."  Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

Sys., Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules

7.04, 7.05, D.S.C.

## B.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The Petitioner is currently incarcerated at the Federal Correctional Institution in Estill, South

Carolina, ("FCI-Estill").   The Petitioner was sentenced on September 26, 2003, to 235 months by

the United States District Court for the Middle District of Florida, for conspiracy to possess with

intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base, and has

a projected release date of September 8, 2012, via Good Conduct Time ("GCT") release.  (Pet.;

Resp.'t's Mem. Supp. Summ. J. Mot. Ex.  #1 ¶ 2.)

The Petitioner alleges that the Bureau of Prisons ("BOP") acted arbitrarily and capriciously in failing to interview him and in denying him the opportunity to participate in a residential drug abuse program ("RDAP"). (Pet. 4.) The Petitioner asserts he has a legal right under the Second Chance Act to have a formal interview to determine his eligibility. Id. The Petitioner asks the Court to order the BOP to allow him to participate in an RDAP, or in the alternative, grant him 12 months of home confinement so he can attend a drug counseling program. (Pet. 5.)

## C. ANALYSIS

The Petitioner challenges the BOP's decision to deny him an interview and entry into an RDAP, which in turn impeded his consideration for designation to a RRC under the Second Chance Act of 2007, U.S.C. § 3624(c). As relief, he asks the court to order that he be reconsidered for an RDAP participation or grant him 12 months of home confinement so he can attend a drug counseling program. (Pet. 5.)

Initially, the undersigned notes that the Court lacks the authority to grant the specific relief requested by the Petitioner, that is, to order his immediate transfer to either an RDAP or home confinement. Even if the court were to determine that the Respondent violated the Petitioner's constitutional rights, this finding would simply result in the issuance of a writ directing the BOP to consider the Petitioner's placement in accordance with the Act. See Wedelstedt v. Wiley, 477 F.3d 1160, 1168-69 (10th Cir.2007) (discussing remedy for invalid BOP regulation concerning pre-release transfer). However, as discussed below, the undersigned recommends that this habeas petition be dismissed.

**1. Second Chance Act of 2007**

The Respondent argues that the Second Chance Act of 2007 is inapplicable to the Petitioner's claims in this action. The Respondent argues that if the Petitioner is contending that his acceptance in and completion of an RDAP would entitle him to placement in a community confinement facility for the maximum allowable period as provided in 18 U.S.C. § 3624(c)(1), his claim fails because mere completion of an RDAP does not entitle an inmate to be placed in such a facility for the maximum allowable time. See Holland v. Federal Bureau of Prisons, 2009 WL 2872835 *7 (D.S.C. Sept. 2, 2009).[3] The undersigned agrees.

Federal law directs the BOP to provide appropriate housing for federal prisoners, and gives the BOP broad discretion in determining where a prisoner is housed.

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—

---

[3]The undersigned also notes that in Holland, while the magistrate judge found the issue ripe for adjudication because the petitioner had received a written decision from the BOP stating that he was ineligible for early release through participation in an RDAP, the District Court was not convinced but determined that in any event, the petitioner was not entitled to habeas relief. Likewise, without deciding the ripeness issue, the undersigned addresses the issue on the merits.

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. *The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.* Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b)(emphasis added).

The federal statute that pertains specifically to Residential Re-entry Center ("RRC"), or halfway house placement, 18 U.S.C. § 3624, was amended by the enactment of the "Second Chance Act of 2007." Section 3624(c)(1) currently provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

This statute clearly authorizes the BOP to assign an inmate to an RRC for any period of time up to the statutory maximum of twelve months. However, it is equally clear that the BOP retains substantial discretion with regard to RRC assignments, as 18 U.S.C. § 3624(c)(6) provides that:

6

> The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is
>
> (A) conducted in a manner consistent with section 3621(b) of this title;
>
> (B) determined on an individual basis; and
>
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

The BOP has adopted regulations governing RRC assignments, as required by § 3624(c)(6) which provide that:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

28 C.F.R. § 570.22.   Pursuant to § 3624(c)(6)), and the regulations, the BOP must determine when an inmate will be assigned to an RRC by conducting an individualized assessment of that inmate's particular circumstances, using the five criteria set forth in 18 U.S.C. § 3621(b) which are set forth above.

Section 3624(c)(4) also provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." Pursuant to § 3621(b), the BOP is to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition." Section 3621(e) specifically directs the BOP to institute RDAPs, and provides an incentive of potential reductions in sentences for inmates who

7

successfully complete such programs.  However, any sentence reduction is discretionary on the

BOP's part. 18 U.S.C. § 3621(e)(2)(B); Lopez v. Davis, 531 U.S. 230, 241 (2001).

The Second Chance Act does not guarantee an inmate a one-year RRC placement.  Rather

it  directs the BOP to consider placing an inmate in an RRC for up to the final twelve months of his

sentence, based on five specific criteria set forth in 18 U.S.C. § 3621(b). Demis v. Sniezek, 558 F.3d

508 (6th Cir. 2009).  See also Creager v. Chapman, 2010 WL 1062610 (N.D.Tex. Mar. 22, 2010)

(holding that although Petitioner disagrees with her RRC placement date after consideration of the

§ 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance

Act or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a

residential reentry center[ ]" and " 'the duration of [RRC] placement is a matter to which the [BOP]

retains discretionary authority.'" (citations and quotation omitted).  Therefore, even if the Petitioner

was to successfully complete an RDAP, he would not be entitled to an automatic sentence reduction

or placement in an RCC or home confinement.  Rather it would be within the BOP's discretion.

Accordingly, this claim is without merit.

2.  RDAP

The Petitioner also challenges the BOP's determination denying him an interview and entry

into an RDAP.  On July 9, 2009, the Petitioner requested to participate in the RDAP program.

(Resp't's Mem. Supp. Summ. J. Mot.  Attach . # 3 Bush Aff. -Ex. A).  On July 29, 2009, the BOP

determined that the Petitioner was not eligible for participation in an RDAP.  (Id. Ex. C.)  This

determination was based upon the lack of documentation to verify the use of drugs and or alcohol

with a specific pattern or abuse. Id.  On August 4, 2009, the Petitioner responded and stated that he

was relying upon his pre-sentence report which stated that the Petitioner admitted to first consuming

alcohol at the age of 14 and that prior to his arrest, he drank on a daily basis.  (Id. Ex. D.)  On

August 6, 2009, the BOP explained to the Petitioner that this did not qualify as a substance abuse

or dependence problem in that daily use of alcohol does not, in and of itself, constitute abuse.  Id.

Subsequently, on June 9, 2010, a Federal Public Defender from the Middle District of Florida

notified the BOP that the Petitioner's sentencing court had permitted the Petitioner to supplement

his pre-sentence report with a copy of a letter from David G. Booze who stated that in approximately

2000-2001, the Petitioner had sought treatment for alcohol problems, but was unable to obtain

treatment because he lacked funds to pay for it, and a copy of a letter written by the Petitioner's

mother stating the Petitioner had an alcohol problem. (Resp't's Mem. Supp. Summ. J. Mot. Attach,.

# 3- Bush Aff.- Exs. E and G .)  However, these documets were also determined to be unacceptable.

(Id. Ex. H.)  The BOP determined that the Petitioner's mother clearly had a  vested interest in her

son's participation in an RDAP (and potential subsequent earlier release) and Booze did not include

any substantiating documentation and furthermore did not have the proper education to diagnosis

the Petitioner. (Id. at Exs. H and I.)

Pursuant to 18 U.S.C. § 3621, the BOP is to "make available appropriate substance abuse

treatment for each prisoner the Bureau determines has a treatable condition of substance addiction

or abuse." 18 U.S.C. § 3621(b). The plain language of the statute is clear: a reduction in sentence

resulting from completion of a treatment program, such as an RDAP, is discretionary and may be

for any period of time, up to a maximum of one year.  Furthermore, placement in an RDAP and any

concomitant reduction in time spent in custody is vested within the discretion of the BOP.  Thus,

as to substance abuse treatment programs, the BOP has wide discretion in determining both whether

an inmate enters such a program in the first instance and whether to grant or deny eligible inmates

a sentence reduction under Section 3621(e).

An inmate may be eligible for an RDAP if he is (1) "determined by the Bureau of Prisons

to have a substance abuse problem," and (2) "willing to participate in a residential substance abuse

treatment program." 18 U.S.C. § 3621(e)(5)(B). The statute does not define "substance abuse

problem," but clearly delegates to the BOP the authority and discretion to determine who has such

a problem. Id. (defining eligible prisoners as those " determined by the [BOP]" to be eligible); Laws

v. Barron, 348 F.Supp.2d 795, 800 (E.D.Ky. 2004) (holding "Congress has clearly authorized the

BOP to select those prisoners who will be best served by participation in such a program.").

The BOP's Program Statement 5331.10 contains certain eligibility criteria an inmate must

fulfill to enter the drug treatment program, including the prerequisite that the inmate suffer from a

"verifiable documented drug abuse problem." As verification, the program statement requires: (1)

a determination by drug abuse program staff that the inmate has a substance abuse disorder; and (2)

substantiation in the PSI or other similar documents in the inmate's central file of the diagnosis.

As set forth above, the BOP determined that the documentation that the Petitioner submitted

was unacceptable.[4]   The undersigned finds that the BOP's interpretation of "substance abuse

---

[4]The undersigned notes that the Petitioner makes much of the fact that the sentencing judge
in his case noted that  the Petitioner "shall participate in the 500 hour Intensive Drug Program while
incarcerated." (Pet'r's Mem. Opp. Summ.J. Mot. at 2.)   However, while the BOP may consider a
sentencing court's recommendation regarding a prisoner's placement in an RADP such a
recommendation "shall have no binding effect" upon the BOP. 18 U.S.C. § 3621(b) ("Any order,
recommendation, or request by a sentencing court that a convicted person serve a term of
imprisonment in a community corrections facility shall have no binding effect on the authority of
the Bureau under this section to determine or change the place of imprisonment of that person.").
See also United States v. Jackson, 70 F.3d 874, 878 (6th Cir.1995)(holding that the sentencing court
could not "order a defendant's participation in a drug rehabilitation program" as part of the
defendant's sentence, but could "recommend that prisoner receive drug rehabilitation treatment while

problem," and its requirement of supporting documentation to verify substance abuse, is not an

unreasonable interpretation of the 18 U.S.C. § 3621,and the decision of the BOP finding the

Petitioner ineligible for an RDAP and subsequent one-year sentence reduction does not violate the

terms of the statute authorizing RDAPs.  Dellarciprete v. Gutierrez, 2006 WL 4446476 (N.D.W.Va.

2006) (unpublished).  Other courts have made similar findings.  See Shew v. FCI Beckley, 2006 WL

3456691 * 4 (S.D.W.Va. 2006) (finding that the BOP's interpretation of § 3621(e) "neither violates

any statutory or constitutional provision, nor is in conflict with any rule, regulation or program

statement"); Montilla v. Nash, 2006 WL 1806414 (D.N.J. 2006) (holding the challenged policy and

practice of the BOP is a reasonable interpretation of the § 3621(e)); Quintana v. Bauknecht, 2006

WL 1174353 (N.D.Fla. 2006) (finding that the BOP's practice of requiring written document of a

verifiable drug abuse problem is not an impermissible or unreasonable interpretation of § 3621(e));

Laws v. Barron, supra (the BOP's interpretation of § 3621(e) does not contravene well-settled

caselaw)).[5]

Furthermore, federal prisoners have no constitutional or inherent right to participate in

rehabilitative programs while incarcerated.  Moody v. Daggett, 429 U.S. 78, 88, n. 9 (1976)(finding

"no due process protections were required upon the discretionary transfer of state prisoners to a

substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate.

---

incarcerated.")

[5]But compare, Kuna v. Daniels, 234 F.Supp.2d 1168 (D.Or .2002) (finding that PS 5330.10
does not require verification in an inmate's central file of abuse or dependence, only the mere use
of drugs or alcohol, therefore, the BOP acted arbitrarily in imposing requirements beyond those in
its program statement); Mitchell v. Andrews, 235 F.Supp.2d 1085 (E.D.Cal.2001) (finding that it
is an unreasonable exercise of the BOP's discretion under the statute to require verification of a
substance abuse problem in the twelve months preceding arrest or incarceration

The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process.").  Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir.1998). See also Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Cook v. Wiley, 208 F.3d 1314, 1322-23 (11th Cir. 2000); Bennett v. Outlaw, ---F.Supp.2d ----, 2009 WL 3808528 *1-2 (E.D.Ar. Nov. 13, 2009) (slip op.);  Hollman v. Lindsay, 2009 WL 3112076 (E.D.N.Y. Sept. 25, 2009); Gibson v. Federal Bureau of Prisons, 121 Fed.Appx. 549, 551 (5th Cir.2004) (unpublished); Kotz v. Lappin, 515 F.Supp. 143, 148-50 (D.D.C. 2007).

## VIII. CONCLUSION

Based on the foregoing, it is recommended that Respondent's Motion for Summary Judgment (dkt. #15) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 18, 2011
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

12